Yes, Your Honor, this case will not be pursued against 17-2041, Michael A. Doyle as trustee of the Patricia A. O'Malley Supplemental Trust, plaintiff's appellant, v. Thomas B. Hood, and Thomas B. Hood's law office, D.C., defendant's appellate. Arguing on the death of the plaintiff's appellant, Mr. Brian R. Holman, arguing on the death of the defendant's appellant, he is a man of federal power. Thank you, Mr. Holman. On behalf of the appellant, you may proceed. Good morning, Mr. Brian Holman, on behalf of the plaintiff's appellant, and may it please the Court. The moment of inquiry as to whether or not 13-214.3d applies in this case is whether the injury caused by the malpractice occurred on the death of a client. Now, the defendants rely on the district. Let me excuse you one moment. Before we even get there, who was the attorney-client relationship with? I can tell you that the attorney-client relationship was with Mr. Harry Doyle and his disabled wife, Patricia O'Malley. They were both the clients? Yes, Your Honor. How was she the wife? I mean, I'm sorry, not how was she the wife, my mistake. How was she a client? Because Harry retained the defendants to prepare, as we allege in the complaint, the estate plan for him and his disabled wife. Why isn't she just a beneficiary of his efforts? Well, that was the... I mean, he being Harry, I'm sorry. I'm sorry? He being Harry, not the attorney. Harry was the... Why is the wife not simply a beneficiary of what Harry and his attorney accomplished? I don't think you can create estate planning for a couple without considering the wife in this situation, the disabled wife, as a client as well. What is your authority for that? Because you seem to be saying that in every case where somebody drafts a testamentary document or has an estate plan for one person, the spouse is automatically a client? Is that what you're suggesting? I'm not suggesting that. What ultimately occurred is when they created the special needs trust in Harry's living trust, statutorily, the effect was that the creator of the trust was Patricia. So they intended to create a special needs trust in Harry's trust and have Harry as the creator of the trust. What ultimately occurred is that statutorily, Patricia was deemed the creator of the trust. So the client relationship was developed also through the fact that what ultimately occurred is the defendants created irrevocable trust on behalf of Patricia. Okay, so you're alleging that the primary purpose, at least ostensibly, would have been to benefit or influence the third party. But I have a more fundamental question. Did you ever plead an attorney-client relationship between the defendants and Patricia? I think we have because what we claimed was that Harry retained defendants to do the estate planning for him and his disabled wife. Did you plead that? I mean, that may have been the ultimate intent, but did you plead that? Yes, we did, Your Honor. That is contained in the complaint. I don't mean to split hairs here, but you just said Harry retained for he and his wife. Harry is the client. Harry is the person who encounters the attorney, pays the attorney, tells him, I keep saying he, I assume the attorney was a he, tells him what I want you to do. I, Harry, this is what I want you to do for me. How is, and I will let you finish it, but how is Patricia a client? I appreciate that down the line, arguably, she becomes in charge of a trust, but how is she the client at the time that those documents were prepared? Patricia didn't have the capacity to retain counsel at that point. At that point, she was already disabled. She had dementia, Alzheimer. So even the defendants admit when they were creating the document that she was disabled. When I get retained by a parent on behalf of a minor child, that minor child is still my client. Same situation arises here. Patricia could not have the capacity to retain counsel. Her husband did that on her behalf when he retained the defendants to create their estate plan, and that's what the defendants set out to do. I'm sorry to throw you off track, but do you want to go back to D and talk about that? Section D, you were going there when I interrupted you, so I apologize. No, and the defendants are relying on the Supreme Court's case in Wampanoag, and they believe that Section D applies because of the fact that up until Harry's death, the trust could have been changed or amended to reflect that, well, to take it out was limiting trust because statutorily that's what had to be done, had to be put in his will. Unfortunately, statutorily, when we cite the statutes, there's both the federal statutes as well as 89 of the Illinois Administrative Code that says that when the defendants set up a third-party special needs trust and a living trust, the result is that Patricia is deemed the creator. Harry's no longer deemed the controller or the creator of that trust. That trust is now Patricia's trust, and on appendix page 23, the actual page of the trust, it's specifically irrevocable as to Patricia. So prior to Harry's death, it couldn't have been changed. One, Patricia is the creator. Two, it's irrevocable to Patricia, and Harry, no matter what he could have done within that one period after he signed the trust and his death, would not change the fact that the trust is not a third-party special needs trust. It's a special needs trust created by the disabled person herself. No, do we still have to consider, though, even with your scenario, do we still have to consider when the injury occurred? Did it occur when she was ordered to pay that penalty? Well, that goes beyond Wack, Rowe, and Snyder. That's what I believe. I believe that Wack, Rowe, and Snyder unfortunately misinterpret Subsection D because, as the Supreme Court said in both Eastman and Landau, in order for there to be a cause of action for legal malpractice, there has to be a pecuniary injury. There has to be actual damage. Patricia did not sustain any type of damage until she was penalized $235,000, and that occurred in 2016. If Subsection D applied, the statute of limitation had expired before she ever applied for medical assistance. There's no way that she could ever know that there would be an injury, let alone there is no injury where she could seek any monetary damages against the defendant. But if we have to follow Wack, Rowe, and Snyder, the court looks at injury differently. And that's what Justice Friedman said in the sentence, Snyder. Which was the dissent. Correct. It is dissent. How would we follow that? I mean, in all honesty, we have to follow the majority ruling in the case, don't we? Can we just reach out and say we don't agree with the Supreme Court's majority? We'll follow the dissent. Can we do that? And I think what Justice Friedman said, and I agree with him, is we have Supreme Court precedents in Eastman and Omaha that says we have to have natural damage. Do we follow that Supreme Court precedents, or do we have Snyder and Wack, Rowe court went away from that? But it's still a good law. I think, and I said this in my brief, that if we're evaluating Subsection D, Wack, Rowe, and Snyder appear to be the law that we have to follow. And if we follow Wack, Rowe, the injury did not occur upon Harry's death. Because the injury occurred when the trust was created, because it became an irrevocable trust to Patricia. And when DHS penalized her $235,000, it did so because she was deemed the creator of the trust. And pursuant to Illinois statute, there is a 60-month look-back period. So the look-back period goes back for 60 months from the day she applied to determine whether or not there was any kind of transfers, whether it occurred from Harry or Patricia. And that's why she was penalized. That's why she incurred damage in an injury, is because of the 60-month look-back, which would not have occurred had the special need trust been set up in a will. It's very specific. When you're creating special need trust, it has to be in a will if you're doing it for a disabled spouse. Do we look at, and I know that both of you have talked about in your briefs, the immediate benefit versus the benefit upon the death. So the benefit, immediate benefit would apply, Section C would apply, benefit upon death, Section D would apply. So here, the documents were prepared through Harry's trust for Patricia's benefit upon his death, correct? Correct. So was it revocable during Harry's life? No. It wasn't revocable during Harry's life because pursuant to statute, when it was created in Harry's living trust, it was deemed created by Patricia. And that's where the shortcoming about happens. At that point, it's irrevocable pursuant to the document. And Harry is not the creator of the trust, so I don't, he couldn't even amend it if he wanted to. He could amend his living trust, but that has nothing to do with, at that point, the special need trust that Patricia had created. But wasn't her trust funded by his estate? I mean, how was that special needs trust funded? Since they were married, they're both their assets. And that's why it has to be done and they will, because if it's created on behalf of a disabled spouse, and if any portion of those assets are marital assets because they're legally married, then she's considered the creator of the trust because it was done outside of the will. If it's done inside of the will, then she can't touch it until he dies. And that's the whole point of the special needs trust. It's being able to have these funds for special needs and still be able to qualify for medical assistance. If she has access, and this is the DHS file, because it was created by her or being created by her, she still had access to these funds. So they made her, they penalized her $235,000. If you still want to be eligible for medical assistance, you have to pay this $235,000 fine. And now you are, had it been done in a will, she would have no access to it until his death. And then she's still, since it's irrevocable, and the trustee at that point is in charge of the funds, she has no real access to those funds and she's still eligible for his special needs. You cited the Eastman case. I'm not, I couldn't follow how Eastman had anything to do with this, because that's asserting a lien in Eastman it didn't talk anything about. Eastman stands for the proposition that in order to have an injury in a legal malpractice case, there has to be a pecuniary injury to an intangible property interest caused by the lawyer's negligence. So for Justice Friedman, in a sense, I cited Eastman as well, stating that until she actually was penalized in 2016, there was no injury and there could be no accrual of the malpractice case. The Second District has consistently held that the statute of limitations does not run until you have damages that you can seek monetary recovery for. There was no monetary damage up until 2016. Again, she didn't apply for medical assistance until after the two-year statute would run under subsection D. There was no one that would know whether or not the trust was improperly done, up until the time that DHS concluded that this was improperly done, especially a disabled individual. Well, isn't that discussed in some of the cases where, admittedly, the exception may shorten the limitations period for legal malpractice, but maybe the plaintiff's action is barred before they even learn of the injury, which seems harsh. But isn't that contemplated in the statute? I mean, you're making a very compelling human nature argument that it seems somewhat unfair, but isn't the statute of limitations, can't you always make that argument? And how do we talk about exceptions? Well, we're stuck with D, and I think WAC will be stuck with BAC as well. You know, B says they put in a discovery in subsection B. It's two years from the time you knew or should have known of the injury. And in this situation, if B applied, she didn't know about the injury until arguably 2016. So being stuck with D, it goes back to the point, did the injury occur upon the death of Harry? It's our conjecture that because of the statute that we cite, when she was deemed the creator of the trust, that's when the injury occurs. That's why the 60-month look-back period applied, and the 60-month look-back period is exactly why she was penalized to earn $35,000. All right. Thank you very much. If there's no further questions, I will. Thank you very much. Thank you. Thank you. Ms. Hamilton, on behalf of the appellee, you may proceed. Thank you, Justice Stiles. Good morning, Your Honors and counsel. May it please the Court. I want to start right away with making sure that I was clear enough in my brief about the differences between a statute of limitations and a statute of repose, and I think some of the questions Your Honors asked already specifically address that, and that, as counsel just said, we are looking at subsection D, and that's what matters. So it's really irrelevant when anyone discovered the denial of Medicaid benefits or the government essentially saying, look, you have this $235,000 available to you. We're going to require that you spend that on your own care before the government will start paying the way. So the date that Patricia, or in this case her son who's acting as trustee of the trust, discovered it is really irrelevant for the purposes of our analysis. And, Justice Shostak, you actually kind of took my initial outline for me, so now I feel a little bit redundant, but the first question is who is the alleged client, and the second one is what allegedly caused the injury. And the plaintiff has the right to frame their case however they want, and that's kind of what I'm presented with, and I have to work within that framework. And from the record on pages C-5 and C-9, you see in the complaint, it specifically states who is the alleged client. In the first iteration of the complaint, it does say, Harry G. Doyle retained the services of HUD in the HUD law office to counsel him and prepare the necessary documents in connection with his state plan. But if the husband and wife are married, what's his is yours, what's yours is his, basically. This is being recorded. Why isn't that the case here? Why isn't, why wasn't she the client as well? Because it was her money, she was entitled to it as much as Harry was. I can certainly see how that argument could be made in a different circumstance, but in this case, and as counsel argued already, the allegation is that Patricia was already disabled, and therefore incapable of entering into the attorney-client relationship on her own. If she's not able to… Was he a guardian, or did he have an attorney? That's not alleged in the complaint, so I can't speak to that. It does not appear, except in the records that I was presented with. But doesn't the case law allude to a third-party beneficiary theory? Absolutely, absolutely. So how does that apply? Well, in a third-party beneficiary status, you still have the client who's retaining the services of the attorney for the direct purpose of benefiting the third party. So, okay, under that analysis, we say Harry hires Mr. Hood, says, I want to benefit my disabled wife. All right, that's fine. The issue is that subsection D, the statute, specifically says the person for whom legal services were rendered, in this case, Harry. Now, yes, those services may have been intended to benefit his disabled wife, but subsection D still applies. So we're still in the subsection D framework. So once we're established, all right, Harry's the client, what allegedly caused the injury? Because so far we're in subsection D, but I haven't done my job yet unless I prove that what allegedly caused the injury still puts us squarely within subsection D. And with that, I went to the record on page C9, which says it lists all these breaches, A through D, and that saying that the supplemental trust now should have been created through the revocable living trust for Harry, that it should have been created as a provision through the will of Harry G. Doyle. And that because of that, when Harry died, the supplemental trust was funded as according to the terms of Harry's trust. The money gets transferred to the supplemental trust, and then much later when Patricia goes to apply for Medicaid funds, the state of Illinois says, hang on a second, you've got $235,000 that are available to you to pay for your own long-term care before we'll start paying for it. So shouldn't Mr. Hood have thought of that? Shouldn't Mr. Hood have said, hey, there's going to be a look-back period here, and this woman is going to be, not a legal term, screwed when it comes time for her to be, you know, to get in a facility. I mean, shouldn't he have thought about that? In terms of if the— In preparing this estate plan? My only hesitation with that, Judge, is that the way that the complaint is written, it says that it's supposed to be for the benefit of Patricia, which is fine, but then I can't also say that my— That brings you in deep. Right, exactly. So we're still in deep. If the alleged breach was creating the supplemental trust through Harry's revocable living trust as opposed to his will, that's straight on par with WACRO, which the Illinois Supreme Court has said when you're talking about a situation, and actually I think the Supreme Court does a great job in Snyder explaining WACRO and the differences in each situation, because then they're directing trial courts and appellate courts to say, look, when you're set with a situation such as this, you have to figure out is this situation more like WACRO or more like Snyder, because then you find out whether you're dealing with subsection C or D. Well, I think to keep in mind, a loose summary would be we'd be confused when you're trying to look at the interplacer. As I understand it, the exception, it's not in addition to the two-year statute of limitations or the six-year statute of repose that applies instead of. You don't total them up. Correct. Pick your best argument here. That's correct. It's either or, correct? It is. It is either or. And subsection D was specifically written for situations where you are drafting estate planning documents or trust documents when you're preparing services for someone who has been passed away and then their beneficiaries or their heirs or someone else has a problem with what you've done and is alleging that you failed to do what they wanted you to do. This is the new timeframe. But didn't it, I mean, how could we not say the injury occurred at the time? How do we say the injury occurred at the time of Harry's death? Didn't the injury occur at the time when she was penalized for that look-back period? No, because the supplemental trust was funded up on his death. And the way the complaint is also written says, if you would have formed this supplemental trust through a will instead of through a revocable living trust, we would have been able to have this $235,000 set aside for something else. She would have been Medicaid eligible immediately. And then they would have this set of money over here for something else. And she wouldn't have had to pay her own way first. The other issue, and I know that counsel addressed this a little bit, of saying that she was deemed to be the creator of the supplemental trust. I don't know that that's terribly persuasive in terms of damages simply because that supplemental trust wasn't funded. So arguably, Mr. Hood, had he sought to correct the error, which is, again, part of subsection D and what they talk about in WACRO, if you have an opportunity to fix any problem prior to the client's death, could have left that supplemental trust unfunded, created a Patricia's Second Supplemental Trust through a will, as alleged by the plaintiff in this case. And then there would have been no problem. So once again, we're squarely within the purview of WACRO and within subsection D. So in summary, you're saying the inevitably and inexorably keep coming back to D. Is that your position? Yes. It is absolutely judged. I think that the injury was caused by the transfer of funds upon hearing step. Correct. Correct.  through a revocable living trust that Medicaid would not have found it or deemed it to be available for Patricia's use, that it would have been set aside for something else, and then Medicaid would have started paying Patricia's long-term care bills right away, as opposed to requiring her to use this $235,000 first. So he committed malpractice, but they're precluded from recovering because of D. Oh, I don't believe we ever admitted that he committed malpractice, but I would say that it is time-barred, certainly, based on the allegations specific in the complaint. As to the one other issue with damages, the injury at Northern Illinois Emergency Physicians and Profit Management, the Illinois Supreme Court has talked about these two cases specific to damage because it can be somewhat of a nebulous concept. There are certain situations where a client is injured but has absolutely no idea how much or to what extent. But the Illinois Supreme Court has been pretty clear, much like the statute of repose, it says you don't need to know how much. You don't need to even have any idea how much. It's only speculative if their existence itself is uncertain, not the amount. So in that sense, the plaintiff has alleged that she was damaged the minute those funds were transferred through the trust, as opposed to a will which occurred on Harry's death. So in that sense, we're squarely within Dee and within Wackrow and the complaint is time-barred. How about the Puzzley case? Wow, the Fourth District is killing me on Puzzley. I've dealt with this case a couple of different times simply because the Fourth District recognizes, hey, I understand our disposition was somewhat rejected by the Illinois Supreme Court in Wackrow, but we think it's a different situation. And Puzzley, the way the Fourth District kind of determined that it didn't fall within Wackrow was because the transfer of the deeds was more like Snyder. In that situation, it was, we want the girls to have the farm. The Fourth District found that the attorney was essentially being directed to get the farm to the girls now, as opposed to an indefinite time when, you know, later through a will. So the Fourth District found that in that situation, the attorney could have and probably should have just prepared the deeds, gotten the farm to the girls while the client was still alive. I know right here. Had he done what he was supposed to have done, there would have been an immediate benefit to the wife. Well, no, because the way the complaint is read and pleased was that there was not supposed to be an immediate benefit to the wife because had there been, Medicaid still would have said you have access to that money. Right, right. So in that situation, I think the Fourth District, I don't think that decision applies to this case, and I think Wackrow and Snyder from the Illinois Supreme Court are certainly much more persuasive in this situation. So the only way, the way that Mr. Hood would have avoided what we're looking at here now is to have passed it through the will. That's what the plaintiff alleges. Okay. Thank you very much, Ms. Hamlin. Thank you very much. Mr. Holman, you may close your rebuttal. Very briefly. Just to address the last point that counsel made, the complaint that's talked about is because of the fact that the only way that you can set up a special needs trust for a disabled spouse is through a will. Had it been done through a will, there would have been no penalty because those assets could have been transferred and she would have been deemed the creator of the trust. When you set it up in the living trust, that's when the problem arises pursuant to the statutes that we cite. Statutorily, it's no longer a living trust set up or a special needs trust set up, a living trust. She is deemed the creator of the trust. It's not a third-party trust anymore. It's her trust, and it can't be repaired at that point because it's irrevocable to her. So you come back to what I said, again, not using legal terms. He screwed up, but how do you make him liable for it when everything falls under D, according to your opponent? Even under D, under Wackrell and Snyder, the fact that the injury did not occur on Henry's death, it occurred upon the execution of the trust because at that point it became the irrevocable trust created by Patricia. Henry's out of the picture at that point. Henry can't do anything. In the last month of his life, he couldn't have amended that. He couldn't have amended the living trust. Let me start again. He could have amended his living trust, but he wasn't the creator of the trust at issue, which caused the penalty. That's Patricia's trust. Patricia's trust was never funded. It was like an empty receptacle until Henry died. So Henry could have changed his trust or created a will to dispose of all of his assets at any time up until his death. So this irrevocable trust is just a piece of paper until it's funded. I mean, I don't mean to be facetious, but there was nothing in it. But it still created a 60-month low-bet period. Only if nothing had changed up until Henry's death. What if during Henry's death he changed his will or his living trust and said, I'm going to leave all my money to the animal shelter? What would have happened then? Then there would have been nothing in her. Nothing would have funded her trust, right? Yes, hypothetically, that is correct. Then where would you be? Probably in the same place. You'd still be standing in front of her. I'd still be standing in front of her, and we'd still be dealing with marital funds. That's why those statutes come into play as well, is because of the fact, and that's why it has to be in the will. Because no matter what time they're funded, they're funded with, in part, marital assets. They're a married couple. You can't ignore that fact. Right, right. Was he her power of attorney? No, I don't believe so. Okay. Anything further, Mr. Henry? No, thank you. All right, thank you very much. I'd like to thank both counsel for their distinct arguments in this very interesting case. The matter will, of course, be taken under advisement, and a written disposition will issue in due course.